# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 23-0532V**

| | |
|---|---|
| DELORIS ALFORD-ROBINSON, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: March 4, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Isaiah Richard Kalinowski, Bosson Legal Group, Fairfax, VA, for Petitioner.*

*Adam Nemeth Muffett, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On April 18, 2023, Deloris Alford-Robinson filed a Petition under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), seeking compensation for a shoulder injury related to vaccine administration ("SIRVA") allegedly related to an influenza ("flu") vaccine received on October 9, 2020. ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish reasonable basis in this claim. Thus, she is not entitled to an award of attorney's fees and costs.

### I.        Relevant Procedural History

On April 19, 2024, Respondent filed his Rule 4(c) Report formally opposing any compensation of this claim, in part because she had not preponderantly established the requisite onset of pain within 48 hours post-vaccination. The earliest medical records instead supported an alternative onset not temporally associated to the vaccination, and after an apparently later stretching incident (which represented a potential alternative explanation for the injury). Rule 4(c) Report (ECF No. 17). On August 19, 2024, I ordered Petitioner to show cause why the case should not be dismissed for those reasons – while also noting the options for voluntarily exiting the Vaccine Program (ECF No. 18).

After subsequent review of the record and Petitioner's brief in opposition, I concluded that Petitioner could not establish her alleged onset, which dictated dismissal of the Table SIRVA claim (ECF No. 26). Afterwards, I granted Petitioner's motion to dismiss any remaining claim, under Vaccine Rule 21 (ECF Nos. 27-28).

On June 16, 2025, Petitioner filed a motion for attorney's fees and costs – specifically stating that her original counsel at Jeffrey S. Pop & Associates (prior to filing of the Petition) should be awarded $5,221.50 in fees and $468.47 in costs, for a total of $5,689.97. Petitioner also requested that her existing counsel at Bosson Legal Group be awarded a further $26,824.80 in fees and $2,809.62 in costs, for a total of $29,634.32 (ECF Nos. 29-30). Petitioner stated that she has not personally incurred any fees or costs related to the prosecution of this matter (ECF No. 30-3). Respondent reacted to the motion, stating that he was "satisfied the statutory requirements for an award of attorney's fees and costs are met in the case," without providing any substantive discussion of the case. (ECF No. 31 at 2). Respondent also deferred to my determination of the appropriate *amount* to be awarded, in the event that the statutory requirements are met (*Id.* at 3-4). Petitioner filed a brief Reply (ECF No. 32).

### II.        Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 569 U.S. 369, 380 (2013)

2

(discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). As Judge Lettow noted in *Davis*, "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits unsuccessful litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs in a case in which compensation was not awarded only if "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit explained, whether a discretionary fees award is appropriate involves two distinct inquiries – a subjective one when assessing whether the petition was brought in good faith and an objective one when ascertaining whether reasonable basis existed. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("*Cottingham I*"). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

Cases in which good faith has been found to be lacking often involve petitioners who failed to produce or actively concealed evidence undermining their claims. *Purnell-Reid v. Sec'y of Health & Human Servs.*, No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. Apr. 6, 2020); *Crowding v. Sec'y of Health & Human Servs.*, No. 16-0876V, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019); *Heath v. Sec'y of Health & Human Servs.*, No. 08-0086V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Carter v. Sec'y of Health & Human Servs.*, No. 90-3659V, 1996 WL 402033 (Fed. Cl. Spec. Mstr. July 3, 1996).

"Additionally, a petitioner's attorney's conduct may also be relevant when evaluating good faith." *Purnell-Reid*, 2020 WL 2203712, at *6. "Counsel still have a duty to investigate a Program claim even if they reasonably find their client to be a credible individual." *Cortez v. Sec'y of Health & Human Servs.*, No. 09-0176V, 2014 WL 1604002, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). Factors, such as a looming statute of limitations and the conduct of counsel, are properly considered when determining whether good faith exists – but *do not bear* on the claim's objective basis. *Simmons*, 875 F.3d at 636; *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018) ("the effort that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period . . . are properly evaluated in determining whether a petition was brought in good faith").

"Reasonable basis, on the other hand, is an objective test, satisfied through objective evidence." *Cottingham I,* 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Human Servs.,* 155 Fed. Cl. 665 at 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish *some evidence* in support of the claim.'" *Id.* (quoting *Chuisano,* 116 Fed. Cl. at 288, emphasis added in *Wirtshafter*). Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Human Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022), *aff'd without op.*, No. 2022-1737, 2023 WL 7545047 (Fed. Cir. Nov. 14, 2023) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is

4

presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

### III.      Analysis – Reasonable Basis

As noted in the opinion dismissing the Table SIRVA claim (ECF No. 26), Petitioner received the at-issue flu vaccine in her left deltoid on October 9, 2020, at an appointment with her primary care physician ("PCP"). Ex. 1 at 1; Ex. 2 at 23-25. Twelve days later, at a tuberculosis screening appointment that involved an intradermal injection to Petitioner's right forearm, the PCP did not record any concerns relating to the recent vaccination or the left shoulder. Ex. 2 at 21-23. Roughly one month later, a chiropractor noted Petitioner's complaint of pain in her neck and *bilateral* shoulders, but focused his treatment on her chronic low back pain. Ex. 9 at 15-16.

Then, over approximately six months (between December 2020 – May 2021), three separate medical providers recorded Petitioner's history that her left shoulder injury specifically "started" with a stretching maneuver – without any reference to the vaccine/ vaccination. Ex. 2 at 18; Ex. 5 at 8; Ex. 12 at 334. These cited records were the most contemporaneous available evidence of the shoulder injury's onset and cause. They support a finding of onset beginning shortly after the stretch – which likely happened sometime after the vaccination (because although the records refer variously to October, November, and December 2020, the injury was not documented at the two medical appointments in October 2020).

I previously reasoned that Petitioner's even *later* statements to her medical providers invoking the vaccination were less probative, because they were likely made at least in part to bulwark this claim. For instance, at the first such encounter (with her PCP on September 14, 2021), Petitioner specifically complained that she "ha[d] SIRVA." Ex. 15 at 12. Her attorney's fees and costs application confirms the litigative backdrop – reflecting that Petitioner had contacted the Pop law firm online, and began its "client intake" process on April 21, 2021. ECF No. 30-2 at 2.

In addition, by at least September 10, 2021, attorney Pop had notified Petitioner that there were "onset issues in the case." ECF No. 30-2 at 3. Again, I do not conclude that Petitioner (or any counsel) acted in bad faith, but a potential injury claim was undisputedly being considered when Petitioner began following up with her medical providers and reporting a somewhat different history of her injury than the more contemporaneous records had established. *See e.g.*, Ex. 15 at 12, Ex. 47 at 4 (PCP in

September 2021 and July 2024); Ex. 20 at 67-69 (orthopedist's "addendum" in September 2021); Ex. 50 at 2 (chiropractor "addendum" made in August 2024). Thus, the claim depended heavily on Petitioner's word alone, which conflicted with the medical records created earliest in time and before she began pursuing her compensation claim.

My onset determination also considered, but did not find probative, two family members' later statements due to their informality (being neither affidavits, nor sworn under penalty of perjury); their preparation several years after the events in question; and their failure to acknowledge the stretching incident noted in the early medical records. For the same reasons, those statements warrant little to no weight in the reasonable basis assessment.

After I dismissed the Table SIRVA claim because of this onset not being within the necessary timeframe post-vaccination – and more likely associated with a later stretching incident - I gave Petitioner the opportunity to evaluate the feasibility of any alternative off-Table claim (ECF No. 26 at 8). But she did not advance any such claim, instead requesting a dismissal decision, and thus further underscoring the absence of objective proof supporting the claim.

Also important to my finding is that the key medical records (dating from October 2020 – May 2021) existed well before the Petition was filed (in April 2023). This is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not. Under such circumstances, counsel reasonably bears the risk in filing a claim that lacks reasonable basis, and therefore may be appropriately denied a fees award.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs to an unsuccessful litigant only where the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing her claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED</u>.**

 **IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
